It's our last case today, and it is People v. Allen. That is case number 4140137 for the appellant Ryan Wilson for the affilee Alison Paige Brooks. Mr. Wilson, you may proceed. My name is Ryan Wilson, and I represent Tremaine Allen on behalf of the Office of the State Appellate Defender. Before addressing the substantive merits of Tremaine's argument, it's important to note that this court does have jurisdiction to consider his arguments. Tremaine filed a pro se motion to reconsider sentence seven days after his sentencing hearing. At the conclusion of that sentencing hearing, his attorney said, Tremaine is without assets to retain an attorney any longer. Please appoint the Office of the State Appellate Defender. So seven days later, Tremaine files a motion to reconsider sentence, and in the first paragraph he notes that it is a pro se motion. That is filed with the circuit court, and because a notice of appeal had been filed prior to that date, the circuit court struck the notice of appeal and set Tremaine's pro se motion for a hearing. That hearing was ultimately dismissed, and a new notice of appeal was filed. The court complied with the requirements of Rule 606B. It did exactly what it was supposed to do here. The State has argued that, well, there's a jurisdictional problem with this case, because according to the State, Tremaine was represented by counsel at the time he filed his motion to reconsider sentence. The language of Rule 606B says that a post judgment motion directed at the verdict can be filed by an attorney, or if not represented, a defendant proceeding pro se. In this case, the record, I think, clearly shows that Tremaine was not represented by counsel at the time he filed his motion. And the State has failed to cite anything in the record to demonstrate that he, in fact, was represented by counsel, either when that motion was filed or during the proceedings on that motion. The court could have written Tremaine back for a hearing on that motion. It certainly could have done that, but that doesn't affect the jurisdiction that this court has. This court doesn't have any questions about the jurisdiction I'd like to ask. Just real quick, the State's argument is that the court should not have stricken the notice of appeal? The State's argument is that because Tremaine, according to the State, was represented by counsel at the time, yes, I'm sorry, the court should not have filed Tremaine's pro se motion, should not have stricken the notice of appeal. So if the State's right and the trial court did not strike the notice of appeal, the notice of appeal would be timely filed? That's correct. Well, I don't even understand what the argument is. I have some of that same problem, Your Honor. Okay. You can go into your other arguments. I'd like to, you're welcome, I'd like to spend a majority of my remaining time discussing argument two, which in my estimation at least is the more complex of the two arguments. That issue explores the State's failure to call any witness involved in the actual testing of the alleged cocaine that Tremaine was charged with bringing into the State of Illinois. That's somewhat of a loaded statement, and so I just want to repeat it one more time and break it down a little bit. The State failed at trial to call any witness who tested the substance, who observed the testing of the substance, who supervised the testing of the substance, who, based on the trial record, even reviewed any of the testing results from the tests that were done on the substance. Is it your position that's a confrontation clause violation? It is my position that that's a confrontation clause violation. And because there are no objections at trial, we have to review it under plain error? That's correct. With regard to the plain error analysis, which prong are you arguing? Both. Both prongs. Well, isn't the first one dealing with when the evidence is closely balanced? That's correct. The evidence was closely balanced in this case, where some mysterious dude shoved cocaine into your client's bag? The evidence was closely balanced. And the reason I make that statement or that declaration is because in any criminal case, or in the vast majority of criminal cases, certainly this criminal case as well, the State is required to show multiple things in order to sustain a conviction or to get a conviction. In this case, the most severe charge was controlled substance trafficking. So they had to prove that Tremaine knowingly brought a controlled substance other than methamphetamine into the State of Illinois. And based on the charging instrument, they proclaimed that that substance was cocaine. And he brought over 900 grams of that substance into the State. If they failed to prove any one of those elements, there's a deficiency within the case. There was testimony regarding, you know, from Luis Castillo, as I set out in the first argument, that he believes he saw Tremaine packaging some substance of some sort. How about the video of the cooking cocaine? What is that worth? Well, it's a video of him being in a house at the same time the cocaine's being cooked. That doesn't necessarily show that he knew that he was the one that took the cocaine to the residence. Well, it certainly shows his involvement in the whole business, which further casts doubt on the ridiculous story he testified to before the jury. Well, even if his story is ridiculous, it doesn't relieve the State of their burden to prove the elements of the offense. Well, no, if that were the case, then there would be no such thing as a case that wasn't closely balanced, would it? I'm not sure that I follow you, Your Honor. Well, the first prong of the plain error says if there was a mistake and the evidence was closely balanced. Correct. By the argument you just made, all cases are closely balanced. It could never be a case that wasn't. I would not say that. And the reason I would not say that is this is a much different case if the State calls either Kristen Beer, the forensic analyst who looked at the cocaine, who allegedly looked at the cocaine. Let's assume the error, that's the whole point. It was a mistake, it was a confrontation clause violation to not call. So that's ipso facto plain error? It is. It renders the evidence, I would say, more than closely balanced. And the reason I'm saying that is if there is a confrontation clause problem, which I believe that there is in this case, then the evidence regarding the test results of the substance that Kristen Beer allegedly tested shouldn't have been admitted. There shouldn't have been any evidence that this substance that came in, any forensic evidence, that the substance that Tremaine allegedly brought into the State was cocaine. But further than that, and I think more importantly for this argument, there would be no evidence that he possessed over 900 grams of that substance. And the sentencing range and the classification of felony in this case is dependent on the State's proof that he brought more than 900 grams into the State of Illinois. The two prongs are a clear, obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant regardless of the seriousness of the error. And the second is a clear, obvious error and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. I'm suggesting to you that the defendant is stuck with his ridiculous story. And the evidence in this case is utterly overwhelming as far as his guilt. The question is, what about the Confrontation Clause violation, as you allege, because there was no testimony about the deal? Correct. But it seems to me that your only shot is a second prong argument, and that's what I want to ask you about. Because the second prong of the Plain Error Doctrine has been repeatedly equated with plain structural errors. As a matter of fact, this court six months ago, in People v. Watts, wrote the following. Considering the unique facts of this matter, we find resolution of this cause more easily accomplished by dispensing with analysis of whether error occurred, instead immediately examining whether the defendant can satisfy either prong of the Plain Error Doctrine, which is an opportunity this court may take. May it not? It may. Therefore, for purposes of our Plain Error Analysis, we assume the admission of the deputy's testimony regarding the defendant's statements was in violation of the defendant's Sixth Amendment right to confrontation. Exactly the same argument we're making here. If, in light of this assumption, the defendant is unable to carry his burden of persuasion as to either prong of the Plain Error Doctrine, he is not entitled to relief. The court then went on to say, Under the second prong of Plain Error Review, the error must be so serious it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the error. Referring to the Thompson decision of the Supreme Court of Illinois, it said, In Thompson, our Supreme Court equated the second prong of Plain Error Review with structural error, asserting automatic reversal is only required when error is deemed structural, such as a systemic error which serves to erode the integrity of the judicial process and undermines the fairness of the defendant's trial. Then, giving some examples, the Supreme Court recognized that errors in a limited class of cases, including the following, a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt in structure. And this court further pointed out five months ago, the Supreme Court has held all Confrontation Clause violations are not structural errors. That in talking about how Second District ZEPLA has held Confrontation Clause errors are not automatically cognizable under the second prong, and indeed Crawford itself and its progeny of the U.S. Supreme Court has said harmless error analysis can apply, and the court in ZEPLA noted that if an error can be harmless, it most certainly cannot rise to the level of plain error. Given all that, and given what this court wrote five months ago in Watts, why don't you fail to meet the second prong? Because it sounds to me like you have not established what amounts to a structural error in this case based upon what I just read. The argument, and I don't know that I, I haven't reviewed Watts that I can recall. Well, in your defense, it was a Rule 23 decision of this court. Okay. But I wrote it. So I understand, and it's something because of the arcane rule of Rule 23, you couldn't cite it, nor could counsel, but by God, I can. So, but go ahead, counsel. My structural error, or the second prong of plain error, you're right, has generally been equated to matters of structural error. The, whereas the error that's being argued in this case isn't one of the specific errors that has been labeled as structural error, and I acknowledge that. It is being argued under the second prong of the plain error analysis, nonetheless, because of the nature of an error being committed in a confrontation, a confrontation clause issue, error being committed. There are arguably no areas of the law where there have been more development of case law over the last ten, maybe even five years, than confrontation cases. And this is a case where the court presided over a trial and allowed the state to admit testimony from a witness who was nothing more than a conduit for another witness who did testing on a critical substance in the case. Well, sure, but in many ways, this is not only not structural error, but the antithesis of it. Are you thinking the guy who came in from the lab who didn't actually perform the test was lying? I don't know that the... It's a matter of hearsay, isn't it? He took someone else's notes and said, I'm from the lab, and there she was. She's in Afghanistan. She's not here, but this is what the test showed. And... Was he lying about that? He wasn't lying... There's no evidence that he was lying about that, but I would like to note one subtle difference between what Your Honor just said, my understanding of the record, at least. He wasn't referring to what the test showed. He was referring to what Ms. Beer's report said. And if I can give this court just an example. As I noted earlier, one of the critical parts of this case is the weight of the substance that Tremaine was convicted of possessing. When Robert Kreft, who was the forensic analyst who did not test the drugs, came in to testify, the state asked him, what was the weight of that? And he said, well, referring to Ms. Beer's report, it was over 900 grams. The critical problem with that is, defense counsel at no point had any opportunity to say, was it weighed properly? No, we're assuming it was an error. That's what plain error argument is about. Let's assume it was an error, but I'm reminded that unobjected to hearsay is entitled for the normal probative value that the trier of fact might give to it. Sure. And if I'm the trial judge and I don't hear any objections to that, I'm thinking, well, why is that? Or if I'm the jury, because it might be, in fact, that was never the defense in this case. The defense was the fantasy, the fairytale that the defendant said about guys putting cocaine in my baggage. Wasn't that the story? Well, I guess I have two responses to that. And that was the, I don't want to classify it as a fairytale, but that was the defendant's theory of defense. The, I'm sorry, I lost my thought, Your Honor. The weight of. The unobjected to hearsay testimony. Thank you, thank you. Go ahead. There is no plain error exception for trial strategy. If counsel had come in and said, you know, as the state suggests, albeit not entirely correctly, that it was a blind meal theory that the defense was pursuing. If he decides not to assert that Tremaine's confrontation rights be fully bestowed upon him, it doesn't matter if he's got a good reason for doing that, as this court has acknowledged, that is error. He, Tremaine, regardless of what the defense strategy is, has a right to have the state admit only proper evidence. Well, this isn't an ineffective assistance of counsel claim. This is a plain error claim. So we're viewing it under the second prong, which the Supreme Court has said is analogous to structural errors. And I, do you cite any case that says a confrontation clause violation reaches a second prong evaluation? I have not. I have not. We'd be the first? I believe you would be if. Well, it doesn't sound, you know, I read this list from our decision in Watts, which is also these other cases, because, frankly, letting a guy from the lab testify erroneously to hearsay about what someone else in the lab did, strikes me as rather short of the standard of a biased judge, racial discrimination, complete denial of counsel, and the other kind of structural errors that are typically the second prong basis. And let me be clear. The law that you are discussing is accurate, and I have not cited a case that said that the error that occurred in this case raises to a level of structural error. What I am merely trying to say is, and maybe it's an argument that the court no longer wishes to entertain, but the evidence, and I'm going back to the closeness of the evidence that we discussed briefly earlier. What was the evidence of the weight of the substance? Merely Robert Kreft's testimony that in Beer's report, she recorded a weight. What would that leave the state with if that was considered evidence admitted pursuant to a crossword violation? Nothing. What is the Supreme Court saying leaps that we're supposed to look at in doing a Crawford analysis? It is whether the material that is examined is something that is examined in the course of everyday procedure. In Leach, it was an autopsy report, and in that case, the court essentially said, well, it's an autopsy report. It's nothing that was developed specifically to aid the state in its prosecution of a defendant. This is different. Well, was this report developed to aid the prosecution of the state? It's my contention that it is, and mainly, I base that upon the fact that Tremaine was arrested and sitting awaiting prosecution when this report was ultimately developed. It was a report that was essential to the state's case in order to meet its burden of proving him guilty of trafficking over 900 grams of cocaine. Absent that report, there's no evidence regarding weight here, which again is why I think that this case goes to the closely balanced problem as to that element, because if that element has gone to state, the state's case is really unviable in many ways. This isn't a case, and I cite it to the Neves case in the briefs, which again is another autopsy case where the state needed evidence of proof of manner of death, how the decedent died. The pathologist was gone at the time of trial, so they called in another pathologist, much like what the state did here. The critical difference between Neves and Tremaine's case is in Neves, the expert simply didn't come in, or the other pathologist didn't simply come in and say, look, I've read the other guy's report, and he says the decedent was killed in this manner, so that's what my testimony is. In Neves, the state provided a new pathologist with autopsy photographs, post-mortem examination report, toxicology analysis, diagrams, investigator reports, and other miscellaneous documents. At that point, the new pathologist could formulate his own opinion about what happened in the case, and there's no confrontation problem, because the defense can fully probe that witness's testimony to determine why he reached the conclusions that he did. The defense couldn't do that here. All the defense had was a pathologist or a forensic scientist coming in and saying, I read the other one's report, and this is what she said. Well, in fact, had the defense objection been made, it would have been easy enough, and what should happen in this case is the other guy from the lab go back and wait. I see my time is up. May I continue and just answer that question? I'm not sure that that was able to be done in this case, mainly because the speedy trial period may very well have been running close to its... What lab was this? That I don't know off the top of my head. Wasn't it an Illinois lab? I believe it was. Again, I don't have any... Well, as opposed to DNA stuff, pretty technical, going back and weighing dope and maybe even testing it, what is that, an hour and a half? Well, the problem in this case, they didn't do that. Well, they didn't, but had an objection been made and sustained, my guess is they could have probably done it. Well, and that's one of the things that really, for all intents and purposes, isn't involved in the plein air analysis here. There's no trial strategy. There's no ineffective assistance of counsel. No, it's not a matter of trial strategy. He just wasn't paying attention is my guess. This is kind of trial mistakes. But one of the problems with failure to object to the foundation of evidence is that the person offering it is not going to notice there's a problem. And that is true. The state should have noted. You figured that this is, wait a second, he's not the guy and he's talking about it. But nonetheless, in a situation like this, in the absence of an objection, they're just sailing out. And the state should have noted about it, and the court should have noted it. Nobody did, and that's why there's a plein air violation here. Counsel, you will have rebuttal. Thank you, Your Honor. Ms. Brooks. Thank you, Your Honor. Allison Paige Brooks appearing on behalf of the people. May it please the Court and counsel. The jurisdiction issue is important to address because it's a threshold issue for this court to determine in order to reach the merits of the appeal. This case is 4-14-0137, which was docketed based on the notice of appeal filed by the circuit clerk on February 20th, 2014, which is more than 30 days after the date of sentencing, which was November 1st, 2013. The defendant is relying on tolling under Rule 606B from what he considers to be a properly filed pro se motion to reconsider sentence filed on November 6th, 2013, which was five days after sentencing. However, as the trial court found, and the defendant has not overcome the presumption of correctness of the record based on the trial court's finding, the defendant remained represented by counsel. When the counsel shows up at the hearing on the pro se motion to reconsider sentence, he's still there. He's still being represented by counsel. And the trial court strikes that pro se motion to reconsider sentence on the very ground that the defendant is still represented by counsel. So in this case, the record does show the defendant was still represented by the same attorney. The fact that he had mentioned that the defendant was now indigent, out of funds, and couldn't afford a counsel for appeal and thereby requested appointment of the appellate defender does not mean that the trial counsel's responsibility for the case ended at sentencing. So you're conceding that the appellate defender wasn't representing the defendant when he filed his motion? The appellate defender... You're conceding that even though the court had appointed the appellate defender? I'm not sure if that's the... Well, he couldn't have been represented by both. You're saying he was represented by trial counsel, so I think logically you must be conceding that he wasn't represented by the appellate defender. Your Honor, I did not make that concession because I believe that it is possible for the defendant to be represented by multiple attorneys. It's not necessarily to the exclusion of trial counsel. A private attorney and the appellate defender? Well, he's not got out of the case. The trial counsel's still in the case through the hearing on the motion to reconsider sentence, which was on February 3, 2014. And, of course, the trial court also had made the appointment order as of the state sentencing in November 2013, appointing the appellate defender. So that's just additional ammunition that the defendant is, in fact, represented by counsel under the rule 606B, which means that his pro se motion to reconsider sentence is a nullity. It's unauthorized. It did not affect the trial court's... this court's jurisdiction, which would have been under the notice of appeal that was sent to this court and docketed as general number 4-13-1000, which, of course, however, was stricken by the trial court on November 8, 2013. And then that striking order was sent to this court. So I'm not sure if this court struck the notice of appeal or dismissed the appeal under 4-13-1000, pursuant to the trial court's order striking that notice of appeal, but I presume that's what happened. And then only later, when the pro se motion to reconsider sentence is stricken, because the defendant remained represented by counsel, the February 2, 2014, docket entry reinstated an initial clerk filed notice of appeal from November 2013. Now, there's a substantial question as to whether the trial court has authority, many months later, to reinstate an appeal that this court would have dismissed pursuant to the trial court's initial order striking that appeal. That's a question this court need not decide and should not decide in this case. This is 4-14-0137. The only question is whether this court has jurisdiction under the clerk filed notice of appeal of February 20, 2014. Whether the other case should be reinstated, or if that requires a supervisory order of the Supreme Court of Illinois, or whether this court has that authority, or whether the trial court has that authority, that's not being argued here, because this is not that appeal. The defendant can then, if he thinks that that should be reinstated, file a motion for supervisory order, for example, from the dismissal of that appeal. But this is an untimely appeal, because under the Rucker case, jurisdiction is vested in Stanter upon the filing of the notice of appeal, which happened in November 2013. Under the Stanford case, which is different, which the defendant relies on, which is an opinion of the appellate court, but should not be followed by this case, because it's in conflict with both the language and intent of Supreme Court Rule 606B and the Rucker decision. And the reason why they're in conflict is because under Stanford, if an unauthorized pro se motion to reconsider sentence tolls the time for appeal, then by necessity, that makes any notice of appeal filed in that meantime premature, and thereby untimely, and thereby does not vest the appellate court with jurisdiction, which is directly in contradiction of the Rucker case, which recognized that an unauthorized pro se motion to reconsider sentence has no effect on the appellate court's jurisdiction, which attaches upon filing of the notice of appeal. So there is a conflict, and it should be resolved in favor of Rucker rather than Stanford, because the intent and language of Supreme Court Rule 606B, which this court can construe, reflects that the time for appeal should be told only if the motion is filed by counsel or by the defendant, if not represented by counsel. So if the defendant is represented by counsel and files an unauthorized motion to reconsider sentence, just as an unauthorized successive post-conviction petition, it should be considered not filed, even though it is in fact accepted by the clerk. So therefore, if it's not filed, it's not subject to tolling. There is no way that there could be... Is there any case that would support this point, not accepted by the clerk? Well, the LaPointe case, which is analogous in the sense that it deals with an unauthorized successive post-conviction petition. It recognizes the doctrine of something being accepted by the clerk is not necessarily legally filed. Filed, in that sense, is more of a term of art rather than the fact that it's been stamped. How about, though, as far as jurisdictional issues for determining whether an appeal lies? I don't know, Your Honor, if that's... I don't have that particular case. But the reason is, in order to have tolling and also recognize under Rucker, if these could be somehow reconciled, Stanford and Rucker could be reconciled, then this court would have to then throw out the third case, which is the one that shows that when a timely notice of appeals filed, jurisdiction attaches in Stanford in the appellate court and deprives the circuit court of jurisdiction to keep proceeding. So, in other words, if the defendant files both an unauthorized motion to reconsider sentence and the counsel files a notice of appeal, if that notice of appeal attaches jurisdiction in this court and deprives it of jurisdiction in the circuit court, then the circuit court no longer has jurisdiction to keep considering that unauthorized motion to reconsider and thereby retain jurisdiction and toll the time for appeal. There's just no possible way that all these rules can be reconciled. The only way to resolve it is to follow 606B's literal language and not follow Stanford. And for those reasons, this court should dismiss the appeal for lack of jurisdiction. I'm also going to proceed on to, if you have no other questions, to that issue of the merits. With respect to the merits... Mr. Wilson is correct, is he not, with regard to his assessment of the Leach case and Crawford v. Washington, where if the hearsay information is based upon, or lab tests based upon a situation where there's a potential target that you need to present to the person, it's going to be a confrontation clause violation as opposed to the routine autopsy done in all cases where a pathologist performs it or possibly even DNA testing where you don't have a potential target, but you have blood samples. Well, I believe that is true because the state does not rely on cases like Barner where the testimony evidence is not considered testimonial because of those issues. In this case, if Beers' report were admitted into evidence, substantively as evidence, then that would be considered testimonial. That's correct, but that's as far as those cases go. But Melendez-Diaz and Bullcoming were cases where the non-testifying analyst report was admitted substantively into evidence. Do you think the U.S. Supreme Court would have decided differently instead of having the written report admitted, a fellow lab tech as here came in and said, this is what the report would say or this is what the lab tech would say? I think it was. As Mr. Wilson pointed out, essentially here this is just a conduit. Why is this constitutionally or significantly different to have someone who is a mere conduit as opposed to the state offering a report to the same effect by the lab tech? Well, the conduit is, if it was in fact a conduit, I think it was the extension of Melendez-Diaz and Bullcoming that showed that that's still an admission of testimonial hearsay. If there's simply a parroting, a conduit. Isn't that what happened here? Or surrogate. It is not, Your Honor. I thought the person who testified hadn't weighed the dope or hadn't tested it. Well, the testimony that is referred to in emphasis on the defendant's brief, page 11, is in he's answering about the nature and weight of People's Exhibit 6. And he said this is based on consulting the official report. The net weight, he said, was 26.4 grams of off-white powder, which is not the exhibit that he's complaining about here. The exhibit that he's complaining about here, he continues on to page 12, he's referring to Exhibit 7. And then he was asked based on his experience, his expertise, review of the records that Ms. Buehr made of her analysis. Counsel, he didn't weigh it. That's not necessarily the case. We don't know that. The record doesn't show. Because even when he's replied, he said this is based on consulting the official report. It doesn't say Buehr's report. We don't know whose official report that was. Well, assuming it doesn't, then whose burden is it? It seems to me if you're offering this evidence and you want to make it clear it's admissible because it's his work, the state should say, did you do it? Did you weigh it? As opposed to this official report, I don't even know what that means. Well, it's the defendant's burden to show plain error. And they have to show clear or obvious error. And their claim here is that Kreft's opinion was simply a surrogate, and that is not borne out by the record as a clear or obvious error on this record. Because it is not clear or obvious on the record whether you're saying the state just didn't ask Kreft, did you weigh it, that you really expect us to believe that, and that Kreft wasn't just testifying based on the report he had read? But I don't know. He was not asked whether he weighed it or not. So the record is not clear on that point. I saw inferences that he didn't. That seems pretty clear to me. Wouldn't he have said if he had weighed it? I mean, as you yourself, we've seen hundreds, maybe thousands of these cases, and the lab tech who weighed it said, I weighed it. Right. But it's still not clear or obvious in this record exactly what he relied on. Assuming he's not the guy, then aren't we in a situation where, as Mr. Wilson argues, he's essentially a conduit, and this is just like the conduit in Volkoming and Melendez-Diaz? No, Your Honor. And the reason why is because the defendant does not correctly characterize the record when he emphasizes that simply that all that he has to go on, this Kreft analyst, is that Beer's report. And that's what he says. He doesn't cite the record for that on his reply brief, but that's his conclusion. All he had to go on was the report. What is incorrect about that? Because he neglects to mention the parts of the testimony where Beer mentions what, I'm sorry, Kreft mentions exactly what Beer did, and in doing so, referred to Beer's notes and records as well as his own experience and expertise. So this is much closer to the State v. Grieb case from Wisconsin. Well, no matter how much experience and expertise he has, that isn't going to help establish the weight unless he weighed it or relied upon somebody else's report regarding weight. You would agree with that, wouldn't you? Well, he relied on notes and records, not just the report, and that's why he can make an independent opinion based on review of another analyst's work. Notes and records. And it doesn't just, the record is not clear as to whether notes and records includes all of the underlying data, for example, the gas chromatograph data that was in the Grieb case, because the record here is just not clear enough to know exactly what Kreft relied upon. One reason is because the defense attorney never really asked these types of questions at a cross-examination because they were content to let this issue go. And plain error, if this is acquiescence, then plain error rule, there is no plain error review. I don't know that the record is clear enough to show the defense attorney just firmly acquiesced into admission of this evidence, but that's certainly a possibility. But here, notes and records is more than simply just the report. It could mean as much as the underlying data if that's included in the file folder, for example, that Kreft reviewed. And an expert is entitled to review the work of another expert and make their own independent opinion based on their own experience and expertise, and that is the Grieb case. And the Grieb case analyzes the Supreme Court precedent all the way up to Williams v. Illinois, which there was no narrowest grounds concurrence. And in those cases are distinguishable because those cases all had testimonial statements. There's no testimonial statement here. And it's simply an independent opinion, and it's not clear or obvious that it is otherwise. Why do you say there's no testimonial statement? Because there's no testimonial statements from here that were admitted in evidence, for example, like the contents of her report was not offered in evidence. Well, the question that Justice Steinman asked earlier, wasn't it offered through Geertz' testimony or through? Kreft's. Yes, testimony. As to the weight of Exhibit 6? Yeah, as to the weight. The weight of Exhibit 6 was only 26 grams. It wasn't going to be. The weight where the state was required to establish over 900 grams. Right. As an element of what was charged. Right. And he was asked, based on a review of the records that Ms. Beer made of her analysis, he's entitled to rely on the records that Beer made of her analysis. That's not just simply reading off a report. You don't think a jury would have considered that when he said 900 and whatever grams it was, that that was probably offered for the truth of the matter asserted? Yes, but it's not. It's hearsay except for the fact that there's a hearsay exception that permits experts to testify as to the conclusions of other experts as that provides the basis for their expert opinion. That's a hearsay exception. Didn't the U.S. Supreme Court make it pretty clear that a bench trial setting is different than a jury trial setting when it comes to determining what should be considered offered for the truth of the matter asserted? I'm not sure which case that is, Your Honor. I think it's Melendez. I think it's in Williams itself. And it's probably in Bulwell as well. Bulwell, excuse me, as well. You're drawing a comparison, it seems to me, between a situation where a radiologist testifies or an orthopedic surgeon, let's say, testifies that the plaintiff had a broken bone based in part upon an x-ray that he didn't cause to be created, but the x-ray tech in the hospital performed an x-ray and radiologists or orthopedic surgeons in the normal course of business rely upon x-rays and forming opinions. That's something we're familiar with. And that would be, seems to be different than a situation where we're talking about people working in a lab testing drugs for use in a criminal case. These are people who individually do their own testing and do their own work. Except that GRIP is a recognition, and because it has to be clear, obvious error, even out-of-state authority like GRIP can show that that means that an error is not clear or obvious because of contrary authority on a question. It shows that an analyst can analyze the work of another analyst. And that, like, view the chromatograph. They didn't produce it. They didn't see it produced, but they can look at the chromatograph and they can make their own independent opinion as to what that chromatograph shows. It's not, it's so far that the error here, as they're saying, is that Kreft didn't perform these tests, ergo he's testifying as a conduit, and that's not the case. And GRIP makes that plain, that it is, an expert does not have to actually perform the test in order to provide an independent opinion. But even if they're clear, obvious error, the defendant still does not get relief unless he can show one of the two exceptions of the problems of plain error analysis. And to say that the evidence is closely balanced, he has no competing expert opinion as to the weight or nature of the evidence. But you have no evidence of weight if there's a Crawford violation. None whatsoever. But the weight is, the, the, Kreft testified, so there's evidence in the record. The only question is to whether there... Not if it was a Crawford violation. It can't be considered. It can still be considered. It's just whether he was denied his right to cross-examine and, and, and thereby poke holes into the credibility or reasons to accept that testimony is true. And by not having a competing expert opinion, for example, then if there were competing expert opinions on the subject of whether this was cocaine or how much it weighed, and then if one of them, for example, had not been... Which one of the U.S. Supreme Court cases speaks about a competing expert opinion? Well, I don't know of the specific case, but the point is that when he talks about there being closely balanced, closely balanced means there's a risk that... It's my time. Finish that thought. Finish that. Thank you, Your Honor. It just simply means is there a risk of an innocent person being convicted here? And the fact that whether he knowingly transported what was in that bag doesn't speak to what that nature of that substance was. And that's why there has to be some sort of competing expert opinion for this to be considered closely balanced. And that's why we would ask for affirmative and alternative. Thank you, Your Honor. Thank you. Rebuttal, if any. Thank you, Your Honor. As to the jurisdictional issue, the state relies on somewhat of a faulty premise. The defendant was representative at the time that he filed his motion. In its argument, the state said, well, counsel was present at the time that they had the hearing on the defendant's pro se motion to reconsider sentence. Counsel was present not because he was representing Tremaine at the time, but because when the motion was filed, the judge sent counsel a copy of the motion and said, I'm sending this for hearing. Be here on this date. That's not a finding that the defendant was represented by counsel either at the time he filed that motion or at the time of the hearing. So there is no evidence whatsoever in this record that he was represented by counsel. Moving on to the substance, the state wants to rely on the fact that Well, it kind of sounds like the trial judge must have thought he was represented. Otherwise, why would the trial judge send notice to Mr. Knoll? It's strictly my guess. Where you have a defendant who is incarcerated in the Department of Corrections that's filed a motion to reconsider sentence, the court may have thought, well, it'll be easier just to have Mr. Knoll come here. Mr. Knoll never once said, I'm representing the defendant. The court never asked him, are you representing the defendant? There's no evidence in the record that he was representing the defendant. The state seems to want to rely on Kreft's testimony that he reviewed Beer's notes and reports as maybe there's documentation regarding the tests that she performed, like test strips or something like that in the record. Specifically, what he testified to was, and this is a question given by the state, and given her absence, have you then had the occasion to review her notes and her reports as they relate to the exhibits that were submitted to the Drug Enforcement Administration for forensic testing and analysis? Yes. There's absolutely no evidence in this record whatsoever that there were any test results, chromatograph results, spectrometer results, nothing that Kreft looked at. This is simply a case where he was acting as a conduit. He was parroting what was in Beer's report, and under the Confrontation Clause requirements, and in the cases that have interpreted it, that is not sufficient in this case. Finally, the state talks about the defense admitting some sort of contrary evidence or contrary witness to counter Kreft's testimony. The defense isn't required to admit evidence. The defense is able to cross-examine the state's witnesses. They can rely on the state's failure to prove an element of an offense if they want to. But there's no reason to disbelieve that testimony, is there? It's hearsay. There's no reason to disbelieve it. Well, part of the whole rationale behind Crawford is you need to have some confirmation, somebody there that can confirm that there's a reason to believe that testimony. That doesn't answer my question. Okay. Maybe I misunderstood the question. Is there any reason to disbelieve that hearsay testimony? Was he making it up? Was he lying? To answer your question with some annotation to it afterward, no. There's no evidence in the record that he was lying. It was improperly admitted because of Confrontation Clause. No. It was improperly admitted. But the other thing is, as I was preparing for this argument today, I was rereading all of Kreft's testimony, and the thing that struck me was he detailed tests that I'd never heard of, and I'd like to think I'm a fairly educated person. These tests sound complicated. And, you know, tests that you would see a chemical analyst perform on a substance. Tests that have a lot of steps to them. He went on for, I think it was about three pages, on the series of steps that an analyst would take in order to examine drugs. I would posit to this court that if there was a misstep in any one of those steps, it could mean that the results that Beer found, and the results that the defense couldn't cross-examine Kreft about because he wasn't involved, were inaccurate. So there's no evidence that the testimony was a lie or was fabricated, but there certainly isn't evidence to demonstrate that the testing should be accepted without question. And, unfortunately, because of the Confrontation Clause violation, the questions were something that the defense was not able to posit because Kreft was not involved in the testing in this case. And that's a problem for the state's case. So for those reasons, we would ask that Tremaine's convictions be reversed or reversed and remanded for a new trial. Okay, Mr. Wilson, thank you. Ms. Brooks, thank you.